United States District Court

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNUSON CORPORATION, a California corporation,

    Plaintiff,

    v.

BUILT ENTERTAINMENT GROUP, INC., a California corporation, and DOES 1–10,

    Defendants.

No. C 05-03705 MHP

**MEMORANDUM & ORDER**
**Re: Motion for Preliminary Injunction**

      Plaintiff Unuson Corp. filed this lawsuit seeking to prevent defendant Built Entertainment Group, Inc. from using the phrase "The US Festival" (the "mark") in connection with concert events that defendant allegedly plans to organize. Now before the court is plaintiff's motion for a preliminary injunction against use of the mark. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND[1]

I.    <u>The Origin of the Mark and Plaintiff's Subsequent Use</u>

      Plaintiff was formed in the early 1980s to organize and promote two large-scale concerts and technology expositions, both of which were titled "The US Festival." Declaration of Stephen

1

Wozniak, in Support of Plaintiff Unuson Corporation's Motion for Preliminary Injunction ("Wozniak Dec.") ¶¶ 3–4. The events took place in 1982 and 1983; both featured performances by a number of famous bands over a multi-day period. Id. ¶¶ 5–8. The concerts were broadcast nationally on MTV, and the second concert was broadcast via satellite to the Soviet Union. Id. ¶¶ 5–6. In addition to the concerts, both events included expositions at which various high technology companies displayed their products. Id. ¶ 9. According to plaintiff, the two events played a significant role in the development of modern electronic music. Id.

Subsequent to the 1982 and 1983 concerts, plaintiff continued to make at least sporadic use of the mark, as follows:

1. At the 1982 and 1983 festivals, plaintiff sold memorabilia bearing the "The US Festival" mark, such as T-shirts and spritzer bottles, to concertgoers. Since 1983, plaintiff has provided leftover memorabilia from the concerts to replace original items that have worn out, but has not manufactured any new memorabilia. Id. ¶ 14.

2. Plaintiff produced a series of movies about the festival, which it licensed to domestic and foreign television stations during the mid-1980s. Id.

3. Plaintiff licensed the mark in 1991 and 1992 for use with audio and video recordings of two of the bands that performed at the festivals. With respect to the first license, covering audio and video recordings of Ozzy Osbourne, plaintiff has not identified any commercial product bearing the mark. With respect to the second license, covering audio and video recordings of the Canadian heavy metal band Triumph, plaintiff identifies a series of audio and video recordings that have been on sale since 1992. Id. ¶ 15.

4. Plaintiff has included information about the festivals on the website www.woz.com (the personal website of Stephen Wozniak, the principal sponsor of the festivals) since 1996. Specifically, the website has included images of the concerts, a collection of links to other websites about The US Festival, and an interactive section containing a section for posting messages relating to the concerts. Id. ¶¶ 11, 17.

2

5. Other websites, which can be reached through hyperlinks on plaintiff's website, contain additional images and "shared memories" of the concerts. Id. ¶¶ 12–13. Plaintiff also claims to have engaged in planning, beginning in 2000, for twentieth and twenty-fifth anniversary concerts. Id. ¶ 16. As part of this planning, plaintiff has entered into license agreements with two event planning organizations.

Plaintiff successfully registered the mark "The US Festival" on the principal register in 1984. Defendant's Request for Judicial Notice in Opposition to Plaintiff's Motion for Preliminary Injunction ("Request for Notice") ¶ 2. In 1990, the mark was canceled as a result of failure to file the periodic declarations which are required to maintain a federally registered trademark. Id.

II.   Defendant's Use of the Mark

Defendant was formed in 2003 as an "artist management and event production company." Declaration of Joseph M. Sofio in Opposition to Plaintiff's Motion for Preliminary Injunction ("Sofio Dec.") ¶ 3. In 2004, defendant "desired to create a musical event with [sic] core name of 'US' because it would be would be a celebration of life through music, i.e., [defendant] wanted a name that would encompass all groups of music and their fans, and [defendant] came up with the name US because it was strong and significant and had patriotic overtones." Id. ¶ 4. Defendant filed an application to register the trademark "The US Festival" with the Patent and Trademark Office ("PTO") on May 21, 2004. Id. ¶ 6. This application was a so-called "intent-to-use" application, based on an alleged bona fide plan to use the mark in commerce. Id. Prior to filing the application, defendant became aware of plaintiff's use of "The US Festival" and prior registration, but concluded that the prior mark was no longer in use based on the 1990 cancellation and minimal subsequent use. Id. ¶ 5. Defendant's application was published for opposition on April 5, 2005, and the mark was allowed for registration on the principal register on September 28, 2005. Id. ¶ 6.

Defendant claims initially to have intended to use the mark in connection with a large concert scheduled for Labor Day, 2005. Id. ¶ 7. Instead, defendant staged a much smaller concert in order to "test" the concept. Id. ¶ 8. Defendant has not provided attendance figures for the concert, but it appears to have been a much smaller-scale event than the original US Festivals. Rather than

3

featuring nationally known bands, the concert featured three local California bands, including "Beandip, a mexican [sic] hardcore band, from Fresno, CA. Beandip has been playing together since high school, and is fronted by Andy Saldate who is a combination of James Brown, Henry Rollins and Prince." See US Festival 2005, at http://www.theusfestival.com/index2.html (last visited Jan. 3, 2006). Subsequent to the "test" concert, defendant filed a statement of use with the PTO. Id. The PTO issued a registration of the mark to defendant on November 22, 2005. Supplement to Defendant's Request for Judicial Notice, at 2.

Plaintiff learned about defendant's plan to use the mark in the spring of 2004 and demanded that defendant abandon its attempt to register and use the mark. Defendant refused, and plaintiff filed the instant lawsuit. Plaintiff now claims that defendant is infringing and diluting its trademark under 15 U.S.C. § 1125.

LEGAL STANDARD

"A preliminary injunction is a provisional remedy, the purpose of which is to preserve status quo and to prevent irreparable loss of rights prior to final disposition of the litigation." Napa Valley Publ'g Co. v. City of Calistoga, 225 F. Supp. 2d 1176, 1180 (N.D. Cal. 2002) (Chen, Mag. J.) (citing Sierra On Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984)). In light of these considerations, a plaintiff seeking preliminary injunctive relief must demonstrate either: "(1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits [have been] raised and the balance of hardships tips sharply in [the plaintiff's] favor." Southwest Voter Registration Educ. Project v. Shelley, 344 F.3d 914, 917 (9th Cir. 2003) (en banc) (per curiam) (citing Clear Channel Outdoor, Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir. 2003)); see also Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115, 1119 (9th Cir. 1999). The components of these two tests, together with the added consideration of the public interest, operate on a sliding scale or "continuum." Southwest Voter Registration Educ. Project, 344 F.3d at 918. Consequently, "the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and

balance of hardships tip in their favor." Id. (citation omitted); see also Miller v. California Pac. Med. Ctr., 19 F.3d 449, 456 (9th Cir. 1994) (en banc).

As in any other civil proceeding, the likelihood of success on the merits and the balance of hardships are the critical considerations in determining whether a preliminary injunction should issue in a trademark infringement action. See, e.g., Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1406 (9th Cir.), cert. dismissed, 521 U.S. 1146 (1997). To prevail on the merits of a trademark infringement claim, a plaintiff must establish "that the defendant's use of its mark gives rise to a 'likelihood of confusion' in the consuming public." Metro Publ'g, Ltd. v. San Jose Mercury News, 987 F.2d 637, 640 (9th Cir. 1993) (quoting E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1290 (9th Cir. 1992)). "Once the plaintiff has demonstrated a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted." Brookfield Communications, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1066 (9th Cir. 1999) (quoting Metro Publ'g, 987 F.2d at 640). Such an injunction may issue even if the plaintiff's mark has not been registered with the PTO. Metro Publ'g, 987 F.2d at 640 (citing New West Corp. v. NYM Co., 595 F.2d 1194, 1198 (9th Cir. 1979)) ("It is not necessary that a trademark be registered in order for it to qualify for protection under the Lanham Act").

DISCUSSION

Plaintiff claims that it has maintained its rights in the mark through the distribution of memorabilia and the licensing of audio and video content from the festivals during the past twenty-two years. Based on its claim of rights in the mark, plaintiff argues that defendant's use of the mark in connection with the very same type of event—a large-scale concert—infringes.

Defendant does not claim priority over plaintiff's original use of the mark for the 1982 and 1983 concerts. Nor does defendant argue that the mark is generic or descriptive—indeed, defendant's own successful registration of the mark without any use in commerce beyond a single small concert event in 2005 forecloses any such argument.[2] Instead, defendant argues that plaintiff's rights to the trademark have been eliminated through lack of use, as shown by the PTO's

5

cancellation of the registered mark in 1990. In the alternative, defendant argues that its current use of the mark does not infringe whatever rights plaintiff has retained in the mark.

I.   Abandonment

Defendant cites no authority for the proposition that cancellation of the registration of plaintiff's mark eliminated plaintiff's interest in the mark. Indeed, defendant acknowledges that federal registration is not a prerequisite for enforcement. See Metro Publ'g., 987 F.2d at 640. In addition to the cancellation, however, defendant points to plaintiff's very sparse commercial activity during the twenty-one year period between the second US Festival in 1983 and defendant's application to use the mark in 2004 in support of its argument that plaintiff has abandoned the mark.

"To successfully assert abandonment by nonuse, a defendant must show (1) nonuse of the mark and (2) intent not to resume its use." 15 U.S.C. § 1127; Sonista, Inc. v. Hsieh, 348 F. Supp. 2d 1089, 1095 (N.D. Cal. 2004) (Whyte, J.). For purposes of assessing abandonment, "use" means "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in the mark." 15 U.S.C. § 1127. Three years of nonuse qualifies as *prima facie* evidence of abandonment. Id.; Sonista, 348 F. Supp. 2d at 1095. "A prima facie case of abandonment may be rebutted by showing valid reasons for nonuse or lack of intent to abandon the mark." Monster Cable Prods., Inc. v. Discovery Communics., Inc., No. C-03-03250 WHA, 2004 WL 2445349, at *1 (N.D. Cal. Nov. 1, 2004) (Alsup, J.) (citing Abdul-Jabbar v. General Motors Corp., 85 F.3d 407, 411 (9th Cir.1996)). Abandonment of a trademark must be strictly proven. Id. (citing Prudential Ins. Co. of America v. Gibraltar Financial Corp. of California, 694 F.2d 1150, 1156 (9th Cir. 1983)).

Plaintiff's use of the mark has indeed been very limited during parts of the period in question, particularly during the late 1980s and early 1990s. Between the mid-1980s and 1991, plaintiff's only use of the mark was the distribution of leftover concert memorabilia to fans. More recently, plaintiff has maintained a website offering pictures for download and a forum for attendees of the concerts to share their memories, and has licensed use of the mark for at least one set of commercial products—the Triumph audio and video recordings.

None of the alleged activities demonstrates a use of the mark in "the ordinary course of trade." The distribution of memorabilia associated with the concerts, the exchange of "memories" by concertgoers, and the labeling of audio and video recordings with the name of the concert at which they originated all fall into the category of nostalgia and retrospection, rather than present active use of the mark in commerce. Plaintiff originally registered the mark in three categories: "Publications-Namely, Programs for Festivals, Bumper Stickers and Posters"; "Clothing-Namely, T-Shirts, Hats and Jerseys"; and "Entertainment Services-Namely, Producing and Staging Music and Technology Festivals." Request for Notice ¶ 2 (citing Trademark Applications and Registrations Retrieval System, at http://tarr.uspto.gov/servlet/tarr?regser=serial&entry=73413928). Plaintiff has not "Produc[ed]" or "Stag[ed]" a music festival since 1983. Nor has plaintiff created a new festival program, bumper sticker, or poster during the same period, as there have been no festivals during that period. Finally, although plaintiff claims to have distributed replacement memorabilia, plaintiff has not created or marketed a new article of clothing associated with the concerts during the intervening period.

The Fourth Circuit reached the same conclusion on very similar facts in Emergency One, Inc. v. American Fireeagle, Ltd., 228 F.3d 531 (4th Cir. 2000). Emergency One, a manufacturer of fire trucks, acquired a smaller manufacturer called American Eagle. Id. at 533. American Eagle's logo consisted of a bald eagle with an American flag in the background. Id. Following the acquisition, Emergency One discontinued use of the logo on new fire trucks, though it continued to provide replacement parts and warranty service for fire trucks bearing the logo. Id. at 534. In some cases, Emergency One would "recycle" used American Eagle fire trucks, retaining the bodywork but replacing the engine, rear axle, transmission, and water pump. Id. In addition, Emergency One continued to promote the American Eagle brand by selling "T-shirts, hats, tote bags, and nameplates bearing the AMERICAN EAGLE logo." Id. Notwithstanding the sale of memorabilia and replacement parts, the court found that "promotional use of this type or incidental use in recycling and repair is not the 'use' required to preserve trademark rights under the Lanham Act." Id. at 535.

Here, as well, plaintiff has distributed replacement memorabilia and "recycled" portions of the original concerts through the distribution of a limited number of audio and video recordings. Moreover, the twenty-year time period in this case is much longer than the three-year period at issue in Emergency One. Defendant has therefore established a *prima facie* case of abandonment.

The remaining question is whether plaintiff has succeeded in demonstrating an intent to resume use of the mark, which may rebut a *prima facie* showing of abandonment. See 15 U.S.C. § 1127. Plaintiff offers evidence of two plans for use of the mark in connection with a more recent concert. First, plaintiff claims to have licensed the mark to 80's Central, Inc. and one other company in 2001, in connection with a possible twentieth anniversary concert in 2002. Supplemental Declaration of Steve Wozniak, in Support of Plaintiff Unuson Corporation's Reply Brief in Support of Its Motion for Preliminary Injunction ¶¶ 7–8. Plaintiff later abandoned plans for this concert, allegedly based on the somber public mood following the events of September 11, 2001. Second, plaintiff entered into a license with an organization called "TEAMexpo" in 2003, in connection with a possible twenty-fifth anniversary concert in 2007. Id. ¶ 8.

Plaintiff's evidence is deficient because the alleged intent to continue use did not arise until 2001, eighteen years after the second concert and long after the requisite period of non-use supporting the *prima facie* case of abandonment had accrued. Cf. Major League Baseball Properties, Inc. v. Sed Non Olet Denarius, Ltd., 817 F. Supp. 1103, 1131 (S.D.N.Y. 1993), vacated pursuant to settlement by 859 F. Supp. 80 (S.D.N.Y.1994) (rejecting an argument of intent to use where the plaintiffs "in no way demonstrated their intent to resume commercial use of the. . .mark within two years" of the original cessation of use). Aside from the recent plans to produce another concert, plaintiff's activities during the period between 1983 and 2001 at most demonstrate an "intent not to abandon." An intent not to abandon, however, is insufficient to rebut a prima facie case of abandonment. See Imperial Tobacco Ltd. v. Philip, 899 F.2d 1575, 1581 (Fed. Cir. 1990); Exxon Corp. v. Humble Exploration Co., 695 F.2d 96, 102–03 (5th Cir. 1982). A concrete "intent to use" is required. Id. This is so because "in every contested abandonment case, the respondent denies an intention to abandon its mark; otherwise there would be no contest." Imperial Tobacco, 899 F.2d at 1581. To overcome the presumption arising from lack of use, "[t]he registrant must put

forth evidence with respect to what activities it engaged in during the nonuse period or what outside events occurred from which an intent to resume use during the nonuse period may reasonably be inferred." Id. Here, plaintiff has arguably failed to produce *any* evidence of an intent to resume dating from the first eighteen years of the nonuse period, and has certainly fallen short of the showing required to obtain a preliminary injunction.

The court finds it highly unlikely that plaintiff will prevail in rebutting the *prima facie* case of abandonment. Plaintiff is therefore unlikely to succeed on either of its claims against defendant.

II.     Infringement

Assuming, arguendo, that plaintiff can prevail in showing that it retains some minimal rights in the mark, the same facts supporting defendant's claim of abandonment suggest that plaintiff is unlikely to succeed in proving infringement. In order to obtain a preliminary injunction, a plaintiff "must establish that it is likely to be able to show. . .a likelihood of confusion." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000). In the Ninth Circuit, courts employ the eight "Sleekcraft" factors in evaluating the likelihood of confusion: (1) the similarity of the marks; (2) the relatedness of the two companies' services; (3) the marketing channels used; (4) the strength of plaintiff's mark; (5) defendant's intent in selecting the mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers. Id. at 1205 (citing AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348–49 (9th Cir. 1979)).

With respect to the first three factors, both parties concede that the two marks are identical ("The US Festival"), that the two marks are used to describe music festivals, and that similar marketing channels may be used to market different music festivals. Defendant protests that plaintiff is no longer in the business of promoting music festivals, and that the marketing channels and target audience for the 1982 and 1983 festivals are likely different from the electronic marketing channels and target audience today, but these arguments are misplaced in the context of determining infringement, which assumes that plaintiff has a present right to use the mark in promoting concerts. All of the first three factors weigh in favor of infringement.

9

With respect to the fourth factor, as already discussed, the strength of plaintiff's mark is negligible in light of the long period of non-use. See, e.g., Boo, Inc. v. Boo.com Group Ltd., No. CIV. 00-1872(PAM/JGL), 2002 WL 334417, at *2 (D. Minn. Feb. 21, 2002) (cited in 2 McCarthy on Trademarks and Unfair Competition § 17:9 (4th ed.)) ("The strength inquiry also examines the mark's commercial strength in the marketplace"). This factor weighs strongly against infringement.

With respect to the fifth factor, defendant has not offered any satisfactory explanation for why it selected, out of all possible names, "The US Festival" as the name for a large-scale concert. The only explanation defendant offers is that it "desired to create a musical event with core name of 'US' because it would be would be a celebration of life through music, i.e., [defendant] wanted a name that would encompass all groups of music and their fans, and [defendant] came up with the name US because it was strong and significant and had patriotic overtones." Sofio Dec. ¶ 4. Aside from the obvious parallels between this explanation and the stated goals of the 1982 and 1983 festivals ("UNUSON" is a contraction of "Unite Us in Song"), it is implausible that defendant was not directly influenced by the past festivals in attempting to secure rights in the mark. The court therefore finds, for purposes of deciding this motion, that defendant willfully copied "The US Festival" mark when it first sought registration in 2004. This factor weighs strongly in favor of infringement.

With respect to the sixth and eighth factors, neither party has presented evidence of actual confusion or evidence of the characteristics of typical consumers in the market for large-scale concerts. Neither factor has an effect on the infringement analysis.

Finally, with respect to the seventh factor, it seems likely that defendant will seek to use the mark in connection with concert promotional materials and memorabilia. To the extent that plaintiff retains any interest in the mark, it appears to lie in the market for concert-related memorabilia rather than in the market for concerts themselves. Thus this factor weighs in favor of infringement.

As the foregoing analysis suggests, this lawsuit presents the court with the unfortunate task of allocating rights between a plaintiff that has been remarkably lax in maintaining its trademark rights and a defendant that, as far as can be determined on the present record, is either hoping to cash in on nostalgia or extract a bit of money from a wealthy entrepreneur. Although the court does not

10

approve of defendant's apparent plan, the rights afforded to trademark holders must have outer boundaries. Plaintiff's mark is too weak, if indeed it has any continuing life, to justify the extraordinary remedy of a preliminary injunction.

The court therefore finds that plaintiff has not established a likelihood of success on the merits of its infringement claim.

III. <u>Dilution</u>

In order to prevail on a claim of dilution, plaintiff must demonstrate that it is the holder of a "famous" mark. 15 U.S.C. § 1127. As already discussed, far from being famous, plaintiff's mark presently survives only in the murky backwaters of the internet and the dark corridors of Amazon.com's warehouses, as well as in the memories of the attendees of the 1982 and 1983 concerts. Plaintiff's dilution claim therefore has no merit.

<u>CONCLUSION</u>

For the above reasons the court hereby DENIES plaintiffs' motion for a preliminary injunction.

IT IS SO ORDERED.


Date: January 23, 2006

_____
MARILYN HALL PATEL
United States District Judge
Northern District of California

11

ENDNOTES

1. Unless otherwise noted, background facts are taken from the declarations submitted with the parties' briefs.

2. Defendant cites Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 927 (9th Cir. 2005) for the rule that the holder of an unregistered trademark has the burden of proving that the mark is valid. The issue in Yellow Cab, however, was whether the user of the mark "Yellow Cab" had succeeded in proving that the mark was not generic. Defendant makes no allegation that the mark is generic in this case.